## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARRINGTON K. JOSEPH,

          *Petitioner*,

   v.

SCI-ROCKVIEW SUPERINTENDENT
MARK GARMAN, *et al.*,

          *Respondents.*

CIVIL ACTION
NO. 18-2202

**PAPPERT, J.**                                                     **August 31, 2021**

### MEMORANDUM

On May 24, 2018, Carrington Joseph filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF 1.)  Over the next two months, Joseph filed several amendments to his petition.  (ECF 5, 8, 10, 12.)  Respondents answered the petition, (ECF 25), and Magistrate Judge Hart issued a Report and Recommendation recommending the petition's denial.  (ECF 30.)  Joseph objected to the R&R.[1]  (ECF 38.)  After thoroughly reviewing the record, Judge Hart's R&R and Joseph's objections, the Court overrules the objections and adopts the R&R.

I

The relevant facts and procedural history are set forth in Judge Hart's R&R and need not be repeated here other than that Joseph was convicted of first-degree murder and sentenced to life without parole for the gruesome stabbing death of his wife.

---

[1]     Joseph filed *pro se* objections to the R&R.  (ECF 38.)  The Court then appointed the Federal Community Defender Office to represent Joseph and granted leave to file counseled objections to the R&R.  (ECF 40, 43.)  After receiving several extensions of time and reviewing the necessary records, the Defender Office informed the Court that Joseph intended to proceed on his *pro se* objections. (ECF 54.)

Joseph's petition asserts nine claims for relief: (1) insufficiency of the evidence to sustain a first-degree murder conviction; (2) ineffective assistance of counsel for failing to prevent him from waiving his right to a jury trial; (3) ineffective assistance of counsel for failing to move for a competency hearing; (4) prosecutorial misconduct for failing to disclose that a Commonwealth witness had a prior arrest and conviction; (5) ineffective assistance of counsel for failing to pursue an imperfect self-defense charge; (6) ineffective assistance of counsel for instructing him not to testify; (7) prosecutorial misconduct for withholding evidence that the murder weapon contained the victim's fingerprints; (8) ineffective assistance of counsel for failing to move to dismiss under Pennsylvania's Speedy Trial Act; and (9) ineffective assistance of counsel for failing to move to recuse the trial judge and ineffective assistance of PCRA counsel for failing to raise the issue.  (ECF 1, 5, 8, 10, 12.)

Judge Hart considered Joseph's claims and recommended that the Court deny his petition in full.  The Court reviews *de novo* the portions of the R&R to which Joseph objects, *see* 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011), and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

II

A

The Antiterrorism and Effective Death Penalty Act of 1996 limits federal courts' power to grant writs of habeas corpus.  Under the Act, a federal court may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings [unless the state court's decision] was contrary to, or involved an

2

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). A state court ruling is "contrary to" clearly established federal law if the court applies a rule that contradicts Supreme Court precedent or if the court confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

## B

Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court; if he does not, the claims become procedurally defaulted and he may not raise them in federal court. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).

A petitioner may be exempt from the exhaustion requirement under three circumstances: (1) he demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law; (2) he demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice; or (3) he invokes the

narrow *Martinez* exception. *Id.* at 750; *Martinez v. Ryan*, 566 U.S. 1 (2012). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000). To show prejudice, the petitioner must prove "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*

The fundamental miscarriage of justice exception "will apply only in extraordinary cases, *i.e.,* where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Asserting actual innocence requires the petitioner to "show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Hubbard v. Pinchak*, 378 F.3d 333, 339 (3d Cir. 2004).

Finally, under the *Martinez* exception, ineffective assistance of trial counsel claims are not procedurally defaulted if: (1) the default was caused by ineffective assistance of post-conviction counsel, (2) that occurred in the first collateral proceeding in which the claim could be heard, and (3) the underlying claim of trial counsel's ineffectiveness has some merit, analogous to the substantiality requirement for a certificate of appealability. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

III

A

Joseph argues he is entitled to habeas relief because the evidence at trial was insufficient to support his conviction for first-degree murder. (Habeas Petition 3, ECF

1.)  When analyzing a sufficiency of the evidence claim in a habeas case, "the critical inquiry . . . does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 433 U.S. 307, 319 (1979).  Instead, the Court must review "the evidence in the light most favorable to the prosecution and determine if *any rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (emphasis in original).

Judge Hart concluded that, "upon review of the evidence as presented by the prosecution in this case, there is no doubt that a rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt."  (R&R 11, ECF 30.)  Joseph objects, contending "[t]he evidence presented by the Commonwealth cannot rationally support an inference that Petitioner had the specific intent to kill."  (Objs. to R&R 3, ECF 38.)  He believes the evidence shows that he "did not intend to kill the decedent but protect himself from [her]."  (*Id.*)

The Commonwealth presented more than enough evidence for a rational trier of fact to convict Joseph of first-degree murder.

> A person is guilty of first-degree murder where the Commonwealth proves that a human being was unlawfully killed; the person accused is responsible for the killing; and the accused acted with specific intent to kill. 18 Pa.C.S. § 2502(d); *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005). An intentional killing is a killing by means of poison, or by laying in wait, or by any other kind of willful, deliberate and premeditated killing. 18 Pa.C.S. § 2502(a).  The Commonwealth may establish that a defendant intentionally killed another "solely by circumstantial evidence, and the fact finder may infer that the defendant intended to kill a victim based on the defendant's use of a deadly weapon on a vital part of the victim's body." *May*, 887 A.2d at 753.

*Commonwealth v. Housman*, 226 A.3d 1249, 1271 (Pa. 2020).  Evidence at trial showed Joseph stabbed the victim more than 80 times, mostly in the back, head, neck and

torso.  (Cmwlth. Appx. Vol. II 20–21, ECF 25-2.)[2]  In doing so, he broke several knives and repeatedly returned to the kitchen to retrieve additional knives so he could continue his attack.  *See* (Cmwlth. Appx. Vol. I 93, 95–96, 100, ECF 25-1).  When the victim managed to momentarily escape, Joseph followed her outside the house, threatened to stab her sister who tried to help her, pulled the victim's hair and stabbed her in the neck, then dragged her back inside the house.  (Cmwlth. Appx. Vol. I 73–74, 86–89); *see also* (*id.* at 62).  When police questioned him, Joseph calmly recounted his brutal attack.  (Cmwlth. Appx. Vol. II 17); *see also* (Cmwlth. Appx. Vol. I 62).  This evidence supports the first-degree murder conviction and, more specifically, the trial court's finding that Joseph had the specific intent to kill the victim.  If Joseph meant only to defend himself—as he argues in his *pro se* objections—he could have stopped his brutal attack and escaped at various times.  He chose not to.  Since a rational trier of fact could have concluded beyond a reasonable doubt that Joseph was guilty, the state court's determination that the evidence was sufficient to support Joseph's conviction was not contrary to or an unreasonable application of *Jackson.*

## B

Next, Joseph asserts several ineffective assistant of counsel claims.  The Supreme Court's two-part test in *Strickland v. Washington* governs ineffective assistance claims.  466 U.S. 668 (1984).  "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency."  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing

---

[2]    References to page numbers in the Respondents' appendices are to the PDF page numbers of each volume.

*Strickland*, 466 U.S. at 687)).  With respect to *Strickland*'s first prong, there is a "strong presumption" that counsel's performance was not deficient.  *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  With respect to prejudice, the "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  The Court must consider the totality of the evidence before the jury in determining whether a petitioner satisfied this standard.  *See Berghuis*, 560 U.S. at 389.

1

First, Joseph contends he is entitled to relief because his trial counsel was ineffective for letting him waive his right to a jury trial.  (Habeas Petition 8.)  He claims his waiver was unknowing and involuntary because he was on heavy sedatives at the time.  (*Id.*)

As Judge Hart explains in the R&R, the PCRA court reviewed Joseph's pre-waiver colloquy with the trial court in which he acknowledged using prescribed medications but denied that they would impede his ability to understand the proceedings.  (Cmwlth. Appx. Vol. I 40.)  Joseph then admitted to having "ample opportunity to consult with [his] attorneys about the decision" to waive his right to a jury trial.  (*Id.* at 42.)  The trial court accepted Joseph's waiver after the colloquy.  (*Id.*

7

at 42–43.)  The R&R also recognizes the significant benefit Joseph received by waiving this right—the Commonwealth took the death penalty off the table.  (R&R 13.)  Joseph presents no evidence, and the Court perceives none, showing that the state court's finding on this ineffective assistance claim was an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts.

2

Second, Joseph claims his trial counsel was ineffective for failing to move for a competency hearing before trial and objects to Judge Hart's contrary conclusion. (Habeas Petition 13; Objs. to R&R 5–6.)  As discussed above in the context of his waiver claim, Joseph testified that he was taking medication that did not impede his ability to understand the court proceedings.  His interview with the police after the murder, his education level and his general demeanor and responses throughout the pre-trial process would not have led counsel to reasonably believe Joseph was incompetent.  *See* (Cmwlth. Appx. Vol. I 40; Cmwlth. Appx. Vol. II 17); *see also* (Cmwlth. Appx. Vol. I 62). Judge Hart considered this evidence and concluded that "[t]he Superior Court's finding that counsel was not ineffective because there was nothing to indicate that [Joseph] was incompetent is not contrary to [ ] clearly established federal law or an unreasonable application of the facts."  (R&R 14.)  The Court's independent review of the record confirms that determination.  Nothing in the record suggests counsel was ineffective for not requesting a competency hearing; Joseph consistently answered the trial court's questions and acted in ways suggesting competence.

3

Third, Joseph argues trial counsel was ineffective for not pursuing an imperfect self-defense theory.  (Habeas Petition 22.)  Judge Hart rejected this claim and Joseph objects, saying the evidence supports his position that he stabbed the victim "in the heat of passion in an attempt to protect himself after she had threatened to get a knife from the kitchen and stab him when the struggle ensued."  (Objs. to R&R 10.)

Joseph's objection, like his claim, is meritless and absurd.  In Pennsylvania, a defendant arguing self-defense must show that he

> "(a) . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."  *Commonwealth v. Samuel*, 590 A.2d 1245, 1247–48 (1991); *see* 18 Pa.C.S. § 505; *see also Commonwealth v. Harris*, 703 A.2d 441, 449 (1997).  "The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger."  *Commonwealth v. Burns*, 416 A.2d 506, 507 (1980).

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012).  The "imperfect belief self-defense" theory is different only in that the defendant can rely on an unreasonable belief that deadly force was necessary.  *Id.*  Even if Joseph is correct that at the outset of his attack he reasonably or unreasonably believed deadly force was necessary to protect himself, the reality of his attack eviscerates this defense.  Joseph stabbed his wife more than 80 times and declined countless opportunities to stop or retreat.  Even worse, when the victim managed to briefly escape, Joseph dragged her back inside their home and continued his attack.  The state court correctly found that any argument that

Joseph was eligible for this defense clearly lacked merit, so counsel could not have been ineffective for failing to raise it.

4

Joseph's fourth ineffective assistance of counsel claim relates to trial counsel's advice that Joseph not testify in his own defense. (Habeas Petition 25.) Joseph claims his counsel coerced him into not testifying and that, by testifying, Joseph could have revealed facts supporting his self-defense theory. (*Id.*) Judge Hart rejected this argument as well, highlighting the state court's review of the trial record showing that Joseph intended to testify but indicated that he did not have a sufficient opportunity to speak to counsel about that decision. (R&R 18–19; Cmwlth. Appx. Vol. II 30–31.) The trial court called a recess, giving Joseph the opportunity to discuss the decision with counsel. (Cmwlth. Appx. Vol. II 30–31.) Joseph ultimately decided not to testify and told the trial court he was "comfortable" with the decision. (*Id.* at 31.)

"Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009) (citations and quotation marks omitted). "The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to call the defendant to the stand, he must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and

10

intelligent decision to testify on his own behalf." *Commonwealth v. Uderra*, 706 A.2d 334, 340 (Pa. 1998).  Joseph had ample opportunity to discuss this decision with counsel and he presents nothing suggesting counsel's advice not to testify was so unreasonable as to "vitiate a knowing and intelligent decision." *Id.*  He argues only that the trial court was denied his version of events leading up to the attack.  (Objs. to R&R 11.)  But he ignores the many dangers of opening himself up to cross-examination and the fact that nothing in the record suggests his decision not to testify was anything but voluntary.

5

Fifth, Joseph contends his counsel was ineffective for not filing a speedy trial motion under Rule 600 of the Pennsylvania Rules of Criminal Procedure.  (Habeas Petition 31.)  Rule 600 allows for dismissal where the Commonwealth fails to bring a defendant to trial within 365 days after filing the criminal complaint, excluding certain delays attributable to the defendant or the court.  Judge Hart agreed with the state court's conclusion that Joseph could not have prevailed on a Rule 600 motion because, after accounting for delays attributable to him and the trial court, the Commonwealth waited only 280 days before bringing him to trial.  (R&R 20.)  Joseph objects, relying on a constitutional speedy trial argument based on the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).  (Objs. to R&R 12–13.)

Joseph is not entitled to relief no matter what theory he asserts as the grounds for his speedy trial claim.  The record shows that, although approximately 17 months elapsed between the criminal complaint and his trial, Joseph was responsible for at

least 124 days of delay and may have been responsible for an additional 202 days.[3]  At the very least, Joseph presents no evidence that the Commonwealth was "anything other than prepared to go to trial" before the Rule 600 deadline.  (R&R 21.)  Because he has no evidence that a Rule 600 motion would have had any chance of success, counsel cannot have been ineffective for failing to pursue the motion.

6

Finally, Joseph claims his trial counsel was ineffective for failing to move to recuse the trial judge.  (Am. Habeas Petition 1–5, ECF 12.)  He alleges a family member attacked him in open court on November 9, 2015, and that this attack "inflamed the passion of the trial judge."  (Objs. to R&R 13.)  Judge Hart found that Joseph failed to exhaust this claim by presenting it on direct appeal or in his PCRA petition.  (R&R 21–22.)  He further concluded that the claim is procedurally defaulted because the time to file a PCRA petition has lapsed.  (*Id.*)

Joseph objects, arguing the Court should excuse his procedural default under *Martinez* because (1) the default was caused by ineffective assistance of post-conviction counsel, (2) that occurred in the first collateral proceeding in which the claim could be heard, and (3) the underlying claim of trial counsel's ineffectiveness has some merit, analogous to the substantiality requirement for a certificate of appealability.  *Cox*, 757 F.3d at 119.  He contends the Court should assume bias where the trial judge witnesses an assault against the petitioner in court.  (Objs. to R&R 14.)  Based on that

---

[3]      The state court found that if Joseph was not responsible for this delay then it was likely attributable to judicial unavailability, which is excludable time under Rule 600.  (Cmwlth. Appx. Vol. V 42–43, ECF 25-5.)

assumption, Joseph argues trial counsel was ineffective for not raising this issue and moving for recusal.  (*Id.* at 14–15.)

Joseph's claim fails for two reasons.  First, the record contains no evidence substantiating Joseph's description of the alleged attack.  *See* (Cmwlth. Appx. Vol. I 81) (referencing only a "disruption in courtroom").  The Court cannot discern bias on the part of the trial judge without any record evidence of the alleged attack.  Second, even accepting Joseph's version of events nothing in the record suggests the trial judge was biased against him based on that attack.  Without any support for his conclusion that the Court should assume bias, he cannot show that his underlying claim of ineffective assistance has some merit and therefore cannot overcome the procedural default under *Martinez*.

## C

Joseph also raises two prosecutorial misconduct claims under *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, the Supreme Court held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  The duty to disclose such evidence applies even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses both impeaching and exculpatory evidence.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985).  "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Strickler v. Greene*, 527 U.S. 263, 280–81

(1999) (citing *Bagley*, 473 U.S. at 682); *see also Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995).

To establish a *Brady* violation a petitioner must also show "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. Thus, the "materiality" of the undisclosed evidence separates the mere nondisclosure of *Brady* material from a true Fourteenth Amendment due process violation under *Brady*. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 289–90 (citing *Kyles*, 514 U.S. at 434).

1

Joseph argues the Commonwealth committed prosecutorial misconduct by withholding evidence of witness Porschia Garcia's prior criminal record. (Habeas Petition 18); *see also* (Objs. to R&R 6–9). He claims he could have used this evidence to impeach Garcia. (*Id.*) Judge Hart rejected this claim, concluding the state court did not err in deciding that nondisclosure of this witness's criminal record "was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"—an essential element of any *Brady* claim. (R&R 14–16); *Strickler*, 527 U.S. at 281. Joseph objects to Judge Hart's treatment of this claim by rehashing his conclusory position that "[i]t cannot be seriously argued that a Commonwealth witness [sic] prior arrest was not materially favorable to Petitioner." (Objs. to R&R 7.)

14

Joseph makes no showing that the Commonwealth's failure to disclose Garcia's criminal record impacted his trial.  Garcia served as one of three eyewitnesses who testified at trial.  As Judge Hart recognized, the state court found that Garcia's testimony was consistent with the other witnesses' and the physical evidence from the scene.  (R&R 15–16.)  The record supports that finding and, as explained above, substantial evidence supported Joseph's conviction.  He presents nothing to suggest that evidence of one witness's criminal record would have impacted his trial.[4]

2

Finally, Joseph argues the Commonwealth committed prosecutorial misconduct by failing to disclose evidence that the victim's fingerprints were found on the knives he used during his attack.  (Habeas Petition 29.)  Judge Hart recommended the Court deny relief on this claim because the state court did not err in finding that evidence of the victim's fingerprints on the kitchen knives Joseph used in the attack was not exculpatory and therefore its disclosure was not contrary to *Brady*.  (R&R 19–20.)

This final claim for relief deserves little attention.  The trial evidence showed Joseph stabbed his wife more than 80 times—mostly in the head, neck, torso and back—and suffered no stab wounds himself.  So he cannot seriously argue that the Commonwealth withholding evidence of his wife's fingerprints on her own kitchen knives somehow casts doubt on the verdict or the fairness of his trial.

IV

---

[4]      Joseph also argues his trial counsel was ineffective for failing to investigate and discover evidence of Garcia's criminal record.  But counsel cannot be found to have been ineffective for not investigating and discovering evidence that would have had no impact at trial.

For the reasons above, the Court adopts the R&R, overrules Joseph's objections and denies and dismisses Joseph's Petition.  An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.